IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **CASES CONSOLIDATED** |
| Petition to Redistrict the Central | : | |
| Bucks School District into Three | : | |
| Election Regions for the Election | : | |
| of School Directors | : | |
| | : | |
| Appeal of: CBSD Fair Votes | : | No. 264 C.D. 2024 |

| | | |
|---|---|---|
| In re: | : | |
| Petition of the Central Bucks | : | |
| School District for Approval | : | |
| of Plan for Redistricting | : | |
| Electoral Regions | : | |
| | : | No. 265 C.D. 2024 |
| Appeal of: CBSD Fair Votes | : | Argued: March 4, 2025 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                          FILED: April 3, 2025

        CBSD Fair Votes (Fair Votes) appeals the order dated February 14, 2024, of

the Court of Common Pleas of Bucks County (trial court), which denied its motion

for attorney's fees, costs, and expenses under the Voting Rights Act of 1965 (Voting

Rights Act)[1] and Civil Rights Attorney's Fees Awards Act of 1976 (Attorney's Fees

_____

[1] 52 U.S.C. §§ 10101-702.

Act).[2]  Fair Votes, an unincorporated association of voters residing in Central Bucks School District (School District), argues it is entitled to fees because it successfully proposed a plan to redistrict the School District's electoral regions and caused the School District to withdraw an unconstitutional competing plan from consideration. After careful review, we affirm.

## BACKGROUND

On December 8, 2022, the School District filed a petition seeking approval of its plan to redistrict electoral regions for the election of its Board of School Directors (Board).  The School District averred populations in its existing regions had become unbalanced, based on data from the 2020 Census, and no longer complied with the requirement in Section 303(b)(3) of the Public School Code of 1949 (School Code)[3] that the population in each region be as nearly equal as possible.  The School District proposed a new, nine-region plan (First School District Plan) with greater population equality between regions, which the Board approved on November 15, 2022.  The School District filed an amended petition on January 25, 2023.

Fair Votes filed an emergency petition to intervene on January 27, 2023.  That same day, Fair Votes filed a petition proposing its own three-region plan to redistrict electoral regions at a separate docket number.  Fair Votes contended the First School District Plan violated the "one person, one vote" principle derived from the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[4] Specifically, Fair Vote maintained the First School District Plan was presumptively

---

[2] 42 U.S.C. § 1988(b).

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 3-303(b)(3).

[4] U.S. Const. amend. XIV, § 1.

unconstitutional because it included a population deviation of over 17% between its most and least populous regions.[5]

In addition, Fair Votes argued the First School District Plan violated the Free and Equal Elections Clause of the Pennsylvania Constitution[6] because it rearranged regions such that some residents would not have an opportunity to vote for a school director for six years and Republican candidates would have an advantage in seven of nine contests.[7]  Fair Votes argued the School District did not form a committee to study the First School District Plan, hold special hearings, or seek public input.  Fair Votes attached a response to the School District's amended petition to its petition to intervene.

The School District filed a response to Fair Votes' petition to intervene on January 31, 2023.  In addition, the School District filed its own petition to intervene and answer to Fair Votes' petition to redistrict electoral regions on February 3, 2023.  The School District denied its First School District Plan violated the "one person,

---

[5] Under the "one person, one vote" principle, "[w]here the maximum population deviation between the largest and smallest district is less than 10%, . . . a state or local legislative map presumptively complies with the one-person, one-vote rule.  Maximum deviations above 10% are presumptively impermissible." *Evenwel v. Abbott*, 578 U.S. 54, 60 (2016) (citations and footnote omitted).  The United States Supreme Court has clarified that "[m]aximum population deviation is the sum of the percentage deviations from perfect population equality of the most- and least-populated districts." *Id.* at 60 n.2.  In other words, "if the largest district is 4.5% overpopulated, and the smallest district is 2.3% underpopulated, the map's maximum population deviation is 6.8%." *Id.*  This standard is also applicable to elections for Board members. *See In re: Petition to Realign Reg'l Election Dists. in Pennsbury Sch. Dist.*, 79 A.3d 1218, 1224 (Pa. Cmwlth. 2013).

[6] Pa. Const. art. I, § 5.

[7] *See League of Women Voters v. Commonwealth*, 178 A.3d 737, 817 (Pa. 2018) (explaining "the neutral criteria of compactness, contiguity, minimization of the division of political subdivisions, and maintenance of population equality" required under the Free and Equal Elections Clause may not be "subordinated, in whole or in part, to extraneous considerations such as gerrymandering for unfair partisan political advantage").

3

one vote" principle of the Equal Protection Clause or would provide Republicans an advantage. In addition, the School District emphasized its plan was on the agenda for the Board's November 15, 2022 public meeting, and the Board had voted to adopt the plan only after public comment and deliberation. The School District argued the Fair Votes Plan would concentrate voting power in the most populous areas of each electoral region and make it difficult for voters who live outside those areas to elect Board members who share their priorities.

The School District filed motions for a continuance on March 30, 2023. The School District requested the opportunity to engage in additional public review and discussion of the competing plans and to invite submissions of alternative plans. The trial court granted a continuance despite Fair Votes' opposition. On September 15, 2023, the School District filed a motion for leave to amend its petition to redistrict electoral regions. The School District averred it convened a redistricting committee, which conducted several public meetings and recommended a new nine-region plan (Second School District Plan) that a member of the public had submitted. The Board adopted the Second School District Plan on September 12, 2023. Fair Votes filed a response to the School District's motion for leave to amend.[8]

By order dated September 19, 2023, the trial court granted the School District leave to amend. The School District filed a second amended petition on September 21, 2023, requesting approval of the Second School District Plan.[9] Fair Votes filed a response. Fair Votes did not challenge the Second School District Plan under the

---

[8] Fair Votes filed an emergency motion to consolidate the two actions on January 27, 2023. At a status conference on April 14, 2023, the trial court granted both parties' petitions to intervene and the motion to consolidate.

[9] Fair Votes also filed a petition to redistrict electoral regions at a third docket number but withdrew that petition when the trial court granted leave to amend.

4

"one person, one vote" principle of the Equal Protection Clause but argued the plan violated the Free and Equal Elections Clause by providing Republican candidates an advantage.

The trial court held a hearing on the Second School District Plan and the Fair Votes Plan on September 28, 2023. By order dated November 2, 2023, the trial court approved the Fair Votes Plan. The trial court did not declare that the Second School District Plan was unconstitutional, though it expressed concern the plan would pack Democrats into a single region. The trial court also emphasized the Fair Votes Plan split fewer municipalities than the Second School District Plan, allowed residents to vote for three Board members rather than one, and allowed residents to vote every two years rather than four years.[10] The trial court later entered an amended order in which it adjusted the schedule for elections under the Fair Votes Plan.

On November 22, 2023, Fair Votes filed a motion for attorney's fees, costs, and expenses. Relying on the Voting Rights Act and Attorney's Fees Act, Fair Votes argued it caused the School District to withdraw support for the First School District Plan and succeeded in convincing the trial court to approve the Fair Votes Plan. In this way, Fair Votes asserted it stopped the facially unconstitutional First School District Plan "from taking effect and depriving the residents of the [School District] of their constitutional rights." Reproduced Record (R.R.) at 1152a. The trial court denied Fair Votes' motion by order dated February 14, 2024. Fair Votes filed a motion for reconsideration, which the trial court also denied. Fair Votes timely appealed.

In its opinion, the trial court explained it did not apply the Voting Rights Act or Attorney's Fees Act because the underlying litigation occurred under Section 303

_____

[10] The School District filed appeals at Commonwealth Court docket numbers 1425 C.D. 2023 and 1426 C.D. 2023 but later discontinued the appeals.

5

of the School Code. R.R. at 1464a-65a. The trial court explained the general rule that parties are responsible for their own attorney's fees. *Id.* at 1465a. Further, the trial court observed the School Code did not include a statutory authorization for an award of fees in an action under Section 303. *Id.* at 1468a. The trial court observed it did not declare the Fair Votes Plan or Second School District Plan unconstitutional under the Equal Protection Clause but adopted the Fair Votes plan because it "more appropriately met criteria defined by the legislature." *Id.* at 1465a.

## DISCUSSION

This appeal requires us to consider whether the trial court erred by failing to apply the Voting Rights Act and Attorney's Fees Act. The dispute is whether the Voting Rights Act and Attorney's Fees Act permit an award of fees in this case and not whether the trial court properly exercised discretion when declining to make an award. Thus, the appeal presents a question of law for which our standard of review is *de novo* and scope of review is plenary. *Meyer v. Cmty. Coll. of Beaver Cnty.*, 93 A.3d 806, 813 (Pa. 2014). We show no deference to the trial court when reaching a decision, and we review the entire record on appeal. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1082 (Pa. 2012).

Fair Votes contends it is entitled to attorney's fees under the provisions of the Voting Rights Act and Attorney's Fees Act. Fair Votes argues it caused the School District to withdraw the First School District Plan, which was unconstitutional under the "one person, one vote" principle of the Equal Protection Clause, and succeeded in convincing the trial court to approve the Fair Votes Plan. Fair Votes Br. at 26-33. Therefore, Fair Votes contends it was the "prevailing party" in an action to enforce the voting guarantees of the Fourteenth Amendment. *Id.* at 33-39. Fair Votes asserts the trial court erred by not declaring the First School District Plan unconstitutional

6

and emphasizes the supremacy of federal law over contrary state law.[11] *Id.* at 21-22, 25-28.

Fair Votes relies on Section 14(e) of the Voting Rights Act, which provides that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e). In addition, the Attorney's Fees Act provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b).

As a general matter, the Voting Rights Act bars discrimination based on race, color, or membership in a "language minority group." *See* 52 U.S.C. §§ 10101-702. Although Fair Votes cited the Voting Rights Act as a basis for an award of attorney's fees below, it did not allege a violation of the statute, nor did it allege the First School District Plan would have a discriminatory impact regarding race, color, or language.

---

[11] Fair Votes is correct, based on the numbers supplied with the School District's petition, that the First School District Plan was presumptively unconstitutional. *See Evenwel*, 578 U.S. at 60. The most populous region in the First School District Plan would have a population of 14,650, the least populous region would have a population of 12,319, and the average population across all nine regions would be 13,448. This would result in a total population deviation of over 17%.

7

Fair Votes cites no authority demonstrating that a state court redistricting case under the School Code can be an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment," 52 U.S.C. § 10310(e), particularly when the School District initially filed the petition acknowledging populations in its electoral regions were unbalanced.[12]

Fair Votes further fails to explain how it is entitled to fees under the Attorney's Fees Act, which by its plain terms applies only to actions enforcing specific statutes. Fair Votes might be attempting to invoke 42 U.S.C. § 1983, which provides a cause of action alleging deprivation of rights, privileges, and immunities under the United States Constitution or federal law. Nonetheless, that section applies to deprivations of rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *Id.* Fair Votes challenged a proposed redistricting plan, rather than a statute, ordinance, regulation, custom, or usage, and no deprivation occurred because the trial court never approved the plan.[13]

Even accepting that the Voting Rights Act and Attorney's Fees Act may apply under these circumstances, we cannot conclude Fair Votes was entitled to attorney's fees as a "prevailing party" because the School District voluntarily withdrew support for the First School District Plan. The United States Supreme Court has rejected the "catalyst theory" that would allow an award of attorney's fees based on "a voluntary change in the defendant's conduct." *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

---

[12] Our research has uncovered only one reported state court decision nationwide that awarded fees under the language codified at 52 U.S.C. § 10310(e), but the court provided no reasoning for its decision. *See Choudhry v. Free*, 552 P.2d 438, 444 (Cal. 1976).

[13] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (explaining local governments may be sued under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").

*Dep't of Health & Hum. Res.*, 532 U.S. 598, 601 (2001). Although *Buckhannon* addressed a request for fees under the Fair Housing Amendments Act of 1988[14] and Americans with Disabilities Act of 1990,[15] the Court recognized the term "prevailing party" also appeared in other statutes, such as the Voting Rights Act and Attorney's Fees Act. *Id.* at 603. The Court explained that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. Thus, an award of fees is appropriate when there is "a corresponding alteration in the legal relationship of the parties." *Id.*

Fair Votes attempts to distinguish *Buckhannon*, arguing the trial court's order granting the School District leave to amend its redistricting petition with the Second School District Plan "provides exactly the sort of judicial imprimatur and material alteration of the legal relationship of the parties" the Supreme Court held necessary. Fair Votes Reply Br. at 10 (quotation marks omitted). Fair Votes' argument fails to consider the explanation in *Buckhannon* that the Supreme Court has "only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree," not where the plaintiff merely "acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by *judicial* relief."[16] *Buckhannon*, 532 U.S. at 605-06 (citations and quotation marks

---

[14] 42 U.S.C. §§ 3601-3631.

[15] 42 U.S.C. §§ 12101-12213.

[16] The Supreme Court further explained:

> Never have we awarded attorney's fees for a nonjudicial alteration of actual circumstances. . . . We cannot agree that the term "prevailing party" authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a

**(Footnote continued on next page…)**

9

omitted).  In this case, the trial court did not enter a judgment on the merits regarding the First School District Plan or even take the plan into consideration.  The trial court considered only the Second School District Plan, which Fair Votes does not dispute was constitutional under the "one person, one vote" principle of the Equal Protection Clause.  *See* Fair Votes' Br. at 34.

## CONCLUSION

Accordingly, we discern no basis for an award of fees under the Voting Rights Act or Attorney's Fees Act.  Our review of the statutes at issue does not reveal that they apply under these circumstances.  Even accepting that the statutes could apply, Fair Votes was not a prevailing party when, at most, it caused the School District to voluntarily withdraw the First School District Plan from consideration and defeated the Second School District Plan, which did not violate the "one person, one vote" principle of the Equal Protection Clause.  Therefore, we affirm the trial court's order dated February 14, 2024.

_____
STACY WALLACE, Judge

Judge Covey did not participate in the decision of this case.

---

nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after destination without obtaining any judicial relief.

*Buckhannon*, 532 U.S. at 606 (citations, footnote, and quotation marks omitted); *but see T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003) (explaining that "judicially sanctioned relief" other than a judgment or consent decree will confer prevailing party status under *Buckhannon*).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: : **CASES CONSOLIDATED**
Petition to Redistrict the Central :
Bucks School District into Three :
Election Regions for the Election :
of School Directors :
:
Appeal of: CBSD Fair Votes : No. 264 C.D. 2024


In re: :
Petition of the Central Bucks :
School District for Approval :
of Plan for Redistricting :
Electoral Regions :
: No. 265 C.D. 2024
Appeal of: CBSD Fair Votes :


# O R D E R


   **AND NOW**, this 3rd day of April 2025, the order of the Court of Common

Pleas of Bucks County, dated February 14, 2024, is **AFFIRMED**.


_____

STACY WALLACE, Judge